**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **United States of America ex rel.** | ) | |
| **KEVIN BIRDO** | ) | |
| | ) | |
| **Petitioner,** | ) | **No. 12 C 05748** |
| | ) | |
| **v.** | ) | |
| | ) | **Judge John J. Tharp, Jr.** |
| **RANDY PFISTER, Warden,** | ) | |
| **Pontiac Correctional Center,**[1] | ) | |
| | ) | |
| **Respondent.** | | |

## MEMORANDUM OPINION AND ORDER

Petitioner Kevin Birdo is currently incarcerated at the Pontiac Correctional Center in Pontiac, Illinois, where he is serving a sentence of seven and a half years for aggravated battery of a peace officer. Birdo now brings a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, in which he raises four grounds for relief: (A) improper denial of his motion for substitution of the trial judge; (B) violation of Illinois Supreme Court Rule 13 when his public defenders did not individually withdraw from his case and notify Birdo of their withdrawals; (C) violation of Birdo's right to confrontation when the trial judge sustained the prosecutor's objection to a particular question; and (D) ineffective assistance of counsel as to Birdo's trial attorney for failing to investigate a potentially exculpatory witness. For the reasons explained here, the Court denies the petition with respect to Claims A, B, and C, but concludes that Birdo may be entitled to an evidentiary hearing of limited scope on his claim for ineffective assistance of counsel (Claim D).

---

[1] The current warden of the Pontiac Correctional Center has been substituted for the original respondent, Marcus Hardy. *See* Fed. R. Civ. P. 25(d); Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts.

## I.    Background

### A.  Facts[2]

On March 27, 2000, a grand jury indicted Birdo for aggravated battery pursuant to 720 ILCS 5/12-4(b)(6). The charge derived from an incident during the transfer of inmates at the Logan Correctional Center in Lincoln, Illinois on January 12, 2000. Birdo was charged with punching a correctional officer several times and spitting in his face next to the Menard Correctional Center transfer bus while it was stopped at Logan. Birdo was tried and convicted of aggravated battery twice by a jury. Logan County assistant public defender Jeff Page was appointed to represent him at both trials.

**The First Trial.** Prior to Birdo's first trial, Page submitted a disclosure to the court listing five witnesses, attaching written statements from four inmates (Maurice Hardaway,[3] Mauricio Rivas,[4] Jason Bartman,[5] and Lonnie Henry[6]), and providing the name of Correctional

---

[2] The facts in this opinion are principally derived from the state appellate court's opinion affirming the trial court's denial of Birdo's petition for post-conviction relief. *People v. Birdo*, No. 4-10-0198 (Ill. App. Ct. 4th Dist. Oct. 14, 2011). The state court's factual findings are presumed to be true, and Birdo has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Thompkins v. Pfister,* 698 F.3d 976, 983 (7th Cir. 2012). Certain procedural facts are also derived from Birdo's pleadings in state and federal court, as well as transcripts from hearings in state court.

[3] Hardaway recalled an incident during which an "officer shoved [an inmate] and he also punched the inmate." Hardaway was not, however, certain that his memory of the incident related to Birdo's case. Dkt. 15-6 at 40-41.

[4] Rivas wrote in his statement that it was a "very cold day" and that Birdo did not have a state-issued coat. Birdo "asked the officer on the bus several times for permission to board the bus and wait in there … because he was cold and wasn't issued a coat to wear … I don't remember exactly what that officer said in response, but I remember it being some type of rude and callous comment because it even made me mad. In response, Mr. Birdo attempted to board the bus anyway, but was immediately thrown or kicked off … I remember it being extremely aggressive in nature. Yet Mr. Birdo, tired of the cold, again tried to board the bus … [he was] in full restraints … That however didn't stop that officer from throwing punches at Mr. Birdo when he began to board the bus … [E]ven with him pinned down like that a couple of officers still continued to beat him. I distinctly remember seeing one in particular who punched Mr. Birdo

2

Officer Michael Littleton. Trial commenced on August 12, 2002. During the course of the trial, Birdo was physically restrained with leg shackles and handcuffs, and was required to take the stand wearing the same restraints. Dkt. 15-6 at 101.

The State presented the testimony of Correctional Officers Bryan Wagner and Craig Cowan. Wagner testified that during the transfer of inmates on January 12, 2000, Birdo stepped onto a bus on which Wagner, Cowan, and Littleton were waiting and stated, "If you want me off this fucking bus you're going to have to take me off." Dkt. 15-15 at 115. Wagner told Birdo to get off the bus and Birdo provided essentially the same response, after which Wagner stepped into the stairwell of the bus and "grabbed a hold of his arm to escort him off the bus…." *Id.* at 116. Birdo then "jerked away from me and hopped down onto the ground, jumped off the last step onto the ground … [A]s I was stepping outside on the ground … Birdo came from the side and with his fist doubled up hit me up side the head, kind of knocked me up against the door, caught me off guard, and then came back and hit me a second time somewhere in the jaw area. And then the third time he swung at me I blocked it with my hand." *Id.* Wagner added that he had "a small cut to the side of my head, and I had a little cut on the back of my hand … [and] I

---

several times while he lay over him…." Rivas further wrote that he filed a grievance with the Administrative Review Board soon after the incident, and that this document contained "the best and most detailed accounts of what transpired on that day." Dkt. 15-6 at 43-45.

[5] Bartman wrote in his statement that Birdo did not have a coat on and that Birdo "said he was going to go stand on the bus for a couple minutes to get warm. When he stepped on the bus the officer from Menard said, quote 'What the fuck are you doing? Get the hell off the bus.' … [A]ll of a sudden the officer jumps out of his chair and goes straight after Mr. Birdo. He started pushing Mr. Birdo by his chest and by his face trying to get him off the bus. So to prevent fall[ing] he was holding on to the officer. After a couple more pushes by the officer they both fell to the ground. They were rolling on the ground for about a minute …." Dk. 15-6 at 47-48.

[6] Henry wrote in his statement that "we were not provided with winter coats … I know that Mr. Birdo was thrown from the bus and possibly struck by a c/o … I also heard the c/o that drove the bus tell the c/o involved in the incident not to worry, 'that they'll take care of it and nobody will believe a[n] inmate just be cool and don't do nothing else.'" Dkt. 15-6 at 50-51.

was having pain from my neck over to my shoulder ….” *Id.* at 117. Cowan testified that “Birdo stepped onto the bus saying he wanted to get on because he was cold. Lieutenant Littleton asked him to step off … Inmate Birdo refused to get off … Then Officer Wagner stood up and told him he needed to get off the bus … [Birdo] said, ‘Fuck you. I’m not getting off … Why don’t you fucking make me, bitch.’ So Officer Wagner proceeded down the steps. I stood up and he went to grab Mr. Birdo’s arm, and he kind of jumped off the bus and kind of in the same motion he c[a]me across … c[a]me up and hit Wagner in the side of the head and neck area … and he got hit twice more that I could see, same head and neck area. And then Wagner blocked the last ... [A]nother officer from another bus had come over to help us out, got some leg irons. While Officer Wagner was applying [leg irons] Mr. Birdo spit in his face.” *Id.* at 141-42. Cowan also testified that the driver of the bus was Officer David Young, that Young “wasn’t on the bus at the time of the incident,” and that he “d[id]n’t know truthfully” where Young was at the time— “I imagine he went inside to do some sort of paperwork.” *Id.* at 140, 147.

The defense called Mauricio Rivas, an inmate, who testified that Birdo asked to get on the bus because he was cold. “[W]hen Mr. Birdo asked if he could board the bus the officer inside made some sort of a humorous comment about it … I remember him laughing about it … He was basically mocking him.” *Id.* at 166-67. Birdo returned to the line of inmates waiting outside of the bus, and then tried to get on the bus a second time but “was pushed off by one of the officers inside.” *Id.* at 168. Rivas did not see Birdo strike an officer during the incident. *Id.* at 169. Birdo’s trial attorney did not call any of the other witnesses he listed in his disclosure.

Birdo testified on his own behalf that he attempted to board the bus twice because he was cold and that during the second attempt, “I believe the bus driver said – he made some type of derogatory statement … I’m not for sure exactly what he said, but he made a statement that was

– I guess you could say it was racial. I mean, he said something about I guess we're going to have some fudge sickles, or something like that, for dessert." *Id.* at 190. Birdo further testified that when he tried to board the bus a third time, Wagner "grabbed me by my label of the jumpsuit, pushed me, and pushed me off the bus. I landed on my head … I believe it was Officer Wagner … jumped on top of me, had his elbow in my head, had me down, face stuck to the pavement. Another officer, I don't know who it was. I don't believe it was … Officer Cowan … but another officer jumped on my legs …" *Id.* at 193.

During the State's closing rebuttal argument, the prosecutor made several improper comments. For example, the prosecutor accused Page of "mak[ing] up things" and "sucking up" to the jury. Dkt. 15-6 at 101. The prosecutor also raised Birdo's prior convictions as evidence of Birdo's propensity to commit crimes—"what happened was an angry, hostile, profane convicted felon, violently convicted felon who was trying to be controlled by two guards." *Id.* at 102. Incredibly, the prosecutor even denigrated the presumption of innocence, stating "that's a legal fiction because … at this point, you've already, in your minds, have heard the evidence and began to form judgments … that presumption of innocence that we are all entitled to, but we should not have the benefit of once we have committed a crime, crimes such as these." *Id.* at 102-03. The jury found Birdo guilty of aggravated battery.

**Birdo's Motion for a New Trial.** Page moved for a new trial on Birdo's behalf, asserting, among other arguments, that Birdo was prejudiced by the fact that he was physically restrained with leg shackles and handcuffs in view of the jury and that he was denied a fair trial due to the prosecutor's comments during his rebuttal closing argument. Dkt. 15-6 at 100-03. On October 8, 2002, the trial court granted the motion. The court stated in an oral ruling that a new

trial was warranted because of the "argument issue," referring to the prosecutor's comments, and the "shackles issue." Dkt. 15-17 at 2.

**Birdo's Pre-Trial Motions.** On the morning of the second trial (November 17, 2003), Birdo (although still represented by Page) submitted three written *pro se* motions: (1) to dismiss the indictment; (2) to substitute the judge; and (3) for a continuance. As part of his motion to dismiss the indictment, Birdo argued that Page was ineffective for, among other reasons,

> not promptly comply[ing] with the defendant's reasonable request for information regarding the bus driver whose name the defendant does not know, but is absolutely sure was physically involved and present during the entire alleged incident. During the trial the defendant informed his attorney that Mr. Cowan was not involved but instead a bus driver was. After the trial the defendant requested information regarding the bus driver and after the new trial was ordered the defendant still sought information regarding this material witness and this request was never responded to or fulfilled by Mr. Jeff Page.

Dkt. 15-13 at 34. Page stated on the record that "what directly concerns me is his statements that I have failed to secure a witness on his behalf that he thinks is critical and saying that failure is a violation of professional conduct, and now in no uncertain terms is saying I'm ineffective on his case." *Id.* at 39. Page later made an oral motion to withdraw as Birdo's counsel, which was denied. *Id.* at 39-40, 46. The court stated, inexplicably in light of Birdo's complaint about Page's failure to obtain information about the bus driver, that "I don't believe any of his criticisms are basically as to what Mr. Page has done." *Id.* at 46. As to the motion to substitute the judge, Birdo argued that the same trial judge "sat on my first trial and heard me testify" and that the judge forced him to wear "full upper body and leg restraints in full view of the jury." *Id.* at 42. As to the motion for a continuance, Birdo argued in his written submission that Page had failed to act on information from Birdo regarding the bus driver's presence during the incident and that

Birdo needed a substantial continuance to find the bus driver. Dkt. 15-6 at 229. In denying all three motions, the court stated that it was "an old case" and "ready for trial." Dkt. 15-13 at 40.

**The Second Trial.** At the second trial, the State again presented the testimony of Officers Wagner and Cowan. Wagner testified that Birdo attempted to board the bus and "I took him by the arm, and when I grabbed a hold of his arm, he pulled away from me and he jumped down onto the ground ... Officer Cowan said something to me and I turned around to look at him, and as I stepped onto the ground inmate Birdo hit me ... He had his hands doubled up in a fist and struck me on the left side ... he came back and hit me again ... he was swinging at me a third time and I blocked it and he hit me in the back of my hand ... as I put the leg irons on he turned around and spit in my face." *Id.* at 89-92. Cowan testified that Birdo attempted to board the bus and Wagner "began to escort him off by grabbing his arm. Mr. Birdo jumped off the bus and at the same time c[a]me up and hit him with two clenched fists." *Id.* at 136. Cowan further testified that he "believe[d] [Officer Young, the bus driver] was out checking other buses to see who had arrived" and that he was not on the bus at the time. *Id.* at 134.

Birdo testified as the only defense witness. He testified that he asked to get on the bus because he was cold. "The bus driver interjected and said some type of derogatory comment and they laughed about it. He said something to the effect that I felt racially insensitive. I don't know if he meant it to be, but he said something to the effect I guess we are going to have fudge sickles for dessert. He and the other officers laughed about it ... I just asked the inmate that was standing there, I said did you hear what he just said." *Id.* at 166-68. Wagner and Birdo exchanged words, and then Birdo "just stood there. I said I'm cold." *Id.* at 169-70. Wagner then

"came running down the steps with as much speed as he can get, grabbed the front of my …

jumpsuit and hurled me off the bus, and I went flying off the bus." *Id.* at 170.

The jury found Birdo guilty of aggravated battery. On December 9, 2003, the trial court

sentenced Birdo to seven and a half years in prison, to run consecutively to his unrelated and (at

the time) unexpired sentences. Dkt. 15-6 at 6.

### B. Procedural History.

**Direct Appeal.** Birdo appealed his conviction, raising (1) a claim for ineffective

assistance of trial counsel for failing to call certain witnesses, including the bus driver, and (2) a

claim that the trial court improperly allowed the state to impeach Birdo with prior convictions.

Dkt. 15-2 at 4. The Illinois Appellate Court found that the trial court did not abuse its discretion

by admitting Birdo's prior convictions for impeachment purposes and declined to adjudicate the

ineffective assistance of counsel claim, stating that "the record contains no indication why

defense counsel did not call these witnesses … the issues are more appropriately addressed in

proceedings on a petition for postconviction relief." Dkt. 15-1 at 8, 11-12 (Order, No. 4-03-1076

(Ill. App. Ct. Dec. 7, 2005)). On March 29, 2006, the Illinois Supreme Court denied Birdo's

petition for leave to appeal. 218 Ill. 2d 544 (2006).

**Post-Conviction.** Birdo next filed a *pro se* post-conviction petition in the Circuit Court in

Logan County, Illinois, claiming that (1) Illinois Supreme Court Rule 13 was violated when the

public defenders assigned to represent him at trial did not individually withdraw each time his

case was reassigned to a new attorney; (2) Page was ineffective for failing to call certain

witnesses, particularly the bus driver, David Young; and (3) Birdo's appellate defender Keleigh

Biggins was ineffective for failing to raise several issues in Birdo's direct appeal. Dkt. 15-6 at

219-25. Birdo's post-conviction counsel, Richard Wray, filed an amendment to the *pro se* post-conviction petition on December 30, 2008. *Id.* at 267-71. Wray argued that:

> [D]espite numerous requests by the defendant, Attorney Page failed to conduct any investigation as to the presence and/or participation of the bus driver. While the written statements of eye-witnesses, together with those of the defendant, placed the driver at the scene at the time of the incident, the State's witnesses testified under oath that the driver was not present.

*Id.* at 269.

On July 2, 2009, the court granted the State's motion to dismiss as to all claims except the ineffectiveness claim. Dkt. 15-6 at 306-10. The court set an evidentiary hearing on the single issue of "petitioner's claim of ineffective assistance of trial counsel based on counsel's failure to call certain witnesses at trial …." *Id.* at 310.[7] The hearing was held on March 15, 2010. Birdo's attorney (Wray) called one witness, Jeff Page, to the stand. Page testified to the following:

- Page called Mauricio Rivas to testify at Birdo's first trial because he "thought he had some information that would be potentially helpful" but he did not call him to testify at Birdo's second trial because he "made a strategic decision" "based upon his testimony at the first trial." Page added that Rivas's version of the incident differed from Birdo's version in certain ways, and Birdo insisted on testifying at both trials. Dkt. 15-21 at 6, 10-11.

- Page interviewed three witnesses on the day of the first trial who were inmates at the time and "decided that none of them were credible in my mind other than Mr. Rivas." *Id.* at 8-10, 13.

- Page acknowledged that he did not subpoena the bus driver, David Young, at either trial. "From what I remember I don't even believe I had a report from [the State's Attorney's office] on this bus driver, and quite frankly from my recollection I don't recall him [Young, the bus driver] ever giving a statement

---

[7] The record submitted by the respondent in this matter is missing page 309 to Exhibit 15-6, which is the fourth page of the circuit court's order dismissing certain of Birdo's claims and setting an evidentiary hearing as to the ineffectiveness claim. The missing page appears to relate directly to the court's assessment of Birdo's ineffective assistance of counsel claim. The result of the court's analysis, however, is evident in the court's decision to set an evidentiary hearing. Dkt. 15-6 at 310.

that would suggest that he knew anything about this altercation, that he saw it, or was even present for this alleged altercation." Page acknowledged, however, that Birdo told him that Young was present ("Mr. Birdo did mention that, yes.") and that it would not have been hard to track him down ("I guess I could have done that."). *Id.* at 19-21, 23-24.

Upon the State's motion for a directed finding, the circuit court described Birdo's claim as ineffective assistance "by failing to call certain witnesses, and those are witnesses whose names have been mentioned here today, three individuals; Jason Bartman, Mauricio Rivas, and Lonnie Henry …." *Id.* at 30. The court found that Page's explanation as to why he did not call Rivas at the second trial was reasonable. *Id.* Further, the court found that there was "a complete lack of evidence supporting the … reasonable probability that counsel's performance was prejudicial … There has not been a single witness presented here. No evidence to indicate what any of these witnesses would have testified to …." *Id.* at 31. The court did not mention Birdo's claim as to Page's alleged ineffectiveness for not calling David Young.

Birdo appealed, arguing that Page was ineffective when he failed to investigate or present Young at either trial. Birdo was prejudiced by this failure, he argued, because the testimony might have bolstered an otherwise uncorroborated defense. Dkt. 15-7 at 11-14. Birdo also argued that his appointed post-conviction counsel, Richard Wray, provided ineffective assistance of counsel by not calling named eye-witnesses at the evidentiary hearing to show the prejudice caused by Page's ineffectiveness at trial. *Id.* at 15.

The Illinois Appellate Court affirmed the circuit court's directed finding after applying the manifest-weight-of-the-evidence standard. Dkt. 15-10 at 8, 12. The court noted that Birdo only challenged the circuit court's order as it related to Page's failure to investigate Young, and not as it related to Bartman, Rivas, and Henry. *Id.* at 9. As to Young, the appellate court recognized that, "In its oral pronouncement, the court did not analyze or mention Page's conduct

of not contacting Young." *Id.* It went on, however, to nevertheless "find the court's analysis would apply equally to Young." *Id.* The court added that the failure to investigate a witness "that purportedly had no knowledge cannot constitute substandard performance." *Id.* Further, Birdo failed to present evidence of prejudice by not producing testimony or affidavits "that would have revealed the extent of Young's knowledge or the nature of his proposed testimony had he been called as a witness." *Id.* at 9-10. As to Wray, the court found that post-conviction counsel cannot be deemed ineffective "for failing to perform a futile act." *Id.* at 10. Since Page exercised "reasonable professional judgment not to investigate Young's involvement," the court could not say that Wray was ineffective for failing to present the testimony of any witnesses. *Id.*

Birdo filed a petition for rehearing, arguing that his post-conviction appellate counsel (Elaine Belcher) was ineffective, in part because she was "obligated to point out that this defendant-appellant testified at both trials" that Young was present, Young made a racially insensitive remark to Birdo, Young assaulted Birdo, and Young helped to restrain Birdo with leg shackles. Dkt. 23-1 at 2. Birdo further argued that the appellate court was in error for applying the same analysis to Young as the court applied to Bartman, Rivas, and Henry. *Id.* at 3. Birdo added that "It can not be assumed that David Young would not have corroborated [Birdo's] version." *Id.* at 4. Birdo also complained that Belcher was ineffective for failing to brief and preserve several issues, including: (1) violations of Illinois Supreme Court Rule 13; (2) the motion to substitute the judge that Birdo made before his second trial; (3) a violation of Birdo's right to confrontation when at the second trial, his attorney was prevented from asking a particular question due to the prosecutor's sustained objection; and (4) ineffective assistance of his direct appellate counsel. *Id.* at 4. The Illinois Appellate Court summarily denied Birdo's petition for rehearing. Dkt. 23-2 at 1. Birdo petitioned for leave to appeal to the Illinois Supreme

Court, raising several of the same arguments (Dkt. 15-11); that petition was also summarily denied. 968 N.E.2d 83 (Ill. 2012).

**Federal Habeas.** On July 23, 2012, Birdo filed a habeas corpus petition in federal court.[8] Birdo raised four claims:

- **Claim A:** Improper denial of Birdo's motion to substitute the trial judge.

- **Claim B:** Illinois Supreme Court Rule 13 violation; failure of two public defenders to formally withdraw from Birdo's case and notify Birdo of their withdrawals; loss of witness list due to that failure.

- **Claim C:** Violation of right to confrontation when the trial judge sustained the prosecutor's objection to a particular question.

- **Claim D:** Ineffective assistance by trial attorney Page for failing to investigate Young.

The Court will address each of Birdo's claims in turn.

## II.  Analysis

To be eligible for a writ of habeas corpus, Birdo must demonstrate that he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *see Cheeks v. Gaetz*, 571 F.3d 680, 684 (7th Cir. 2009). Challenges to the duration of a custodial sentence "are the province of habeas corpus." *Muhammad v. Close*, 540 U.S. 749, 750 (2004). Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which applies to Birdo's petition because it was filed after AEDPA's effective date, a federal court may grant relief on the basis of a claim that has been adjudicated on the merits by a state court only if the state court proceeding: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the

---

[8] The petition appears to be timely. The one-year statute of limitations for filing the petition, 28 U.S.C. § 2244(d)(1)(A), began to run (after post-conviction tolling) upon the denial of Birdo's petition for leave to appeal to the Illinois Supreme Court on March 28, 2012. At most, about 117 days had run off of the 365 day clock when the petition was filed on July 23, 2012.

United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).[9] A judgment is "contrary to" established federal law when the court applies a rule that contradicts Supreme Court precedent. *See Williams v. Taylor*, 529 U.S. 362, 405 (2000). "An unreasonable application occurs when a state court identifies the correct governing legal principle from [the U.S. Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] petitioner's case." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005) (internal quotation omitted). "[I]f it is a close question whether the state decision is in error, then the state decision cannot be an unreasonable application." *McCambridge v. Hall*, 303 F.3d 24, 36 (1st Cir. 2002). This deferential standard of review comes with the burden "on the petitioner to show that the state court's determination of fact or its application of federal law was unreasonable." *Sturgeon v. Chandler*, 552 F.3d 604, 609 (7th Cir. 2009).

**A. Claims A, B, and C Are Not Procedurally Defaulted.**

The respondent maintains that consideration of Claims A, B, and C is barred by the procedural default rule. It is true, as the respondent argues, that Birdo did not raise Claims A, B, and C before the Illinois Appellate Court or the Illinois Supreme Court in his direct appeal. But Birdo has raised these claims several times before appearing in federal court, and the state courts have never relied on a procedural default to deny his claims. Accordingly, consideration of the claims here is not barred by any procedural default. *See Coleman v. Thompson*, 501 U.S. 722, 730 (1991); *see also Braun v. Powell*, 227 F.3d 908, 912 (7th Cir. 2000) (the state court must

---

[9] Claims that were not adjudicated on the merits in state court proceedings, by contrast, are subject to evaluation under the general standard set forth in 28 U.S.C. § 2243, which requires federal courts to "dispose of the matter as law and justice require." *See Cheeks*, 571 F.3d at 684-85.

have actually and "clearly and expressly" relied on the procedural default as the basis of its ruling, otherwise the procedural default will not bar federal habeas review).

As to Claim A, Birdo first raised the issue in his *pro se* motion before his second trial. Dkt. 15-6 at 142, 231 ("Motion to Substitute Judge," filed Nov. 17, 2003). On the morning of his second trial, Birdo explained to the court that he was bringing the motion because:

> [Y]ou sat on my first trial and heard me testify. Should I choose not to testify at the new trial, you can still be affected by what you heard in the defendant testifying in the first trial. This could prejudice the judge against the defendant … Judge Coogan forced the defendant to go through the entire trial in full upper body and leg restraints in full view of the jury which prejudiced the jury against the defendant. The defendant fears such actions will be taken against him again … [Y]ou are the one who decides whether or not you are going to accept the jury verdict.

Dkt. 15-13 at 41-43. Birdo also raised Claim A as part of an ineffective assistance of counsel claim in his *pro se* post-conviction petition, which he filed on July 24, 2005 with the circuit court in Logan County. Dkt. 15-6 at 222-23. Birdo wrote that his trial attorney, Page, refused to file the motion, forcing Birdo to file it *pro se*, and that it was improperly denied. *Id.* at 222. Birdo went on to describe the underlying substance of Claim A, arguing that he was denied a fair trial because Judge Coogan showed prejudice against him in various ways during the second trial. *Id.* at 223. Birdo's appointed post-conviction counsel, Belcher, did not raise Claim A in her briefs before the Illinois Appellate Court (Dkt. 15-7 and 15-9), but Birdo again raised the issue in his post-conviction petition for rehearing after the Illinois Appellate Court's affirmance. Dkt. 23-1 at 4. Birdo argued that Belcher was ineffective for "fail[ing] to brief and preserve that defendant-appellant made an allegation in his post-conviction petition that he had a right to a substitution of judge before his 2nd trial." *Id.* Finally, Birdo raised Claim A in his petition for leave to appeal to the Illinois Supreme Court, in which he again framed the issue as part of an ineffective assistance

of appellate counsel claim. Dkt. 15-11 at 6. In his federal habeas petition and reply brief, Birdo frames Claim A as an improper denial of his motion and his due process rights, but not as a claim for ineffective assistance of appellate counsel. Dkt. 1 at 5; Dkt 16 at 3, 4-7. At no time, however, has any Illinois court denied this claim based on procedural default by Birdo in failing to present the claim on direct appeal.

As to Claim B, Birdo described his claim in his post-conviction petition for rehearing before the Illinois Appellate Court, in which he framed it as a claim for ineffective assistance of appellate counsel. Dkt. 23-1 at 4. In the petition, Birdo argued that Belcher was ineffective for "fail[ing] to brief and preserve defendant-appellant's allegation made in his post-conviction petition that Supreme Court Rule 13 was violated multiple times." *Id.* Birdo also raised the issue in his petition for leave to appeal to the Illinois Supreme Court, in which he again framed the issue as a claim for ineffective assistance of appellate counsel. Dkt. 15-11 at 2, 6. In his federal habeas petition and reply brief, Birdo frames Claim B as a violation of Supreme Court Rule 13 itself and of his due process rights, but not as a claim for ineffective assistance of appellate counsel. Dkt. 1 at 5; Dkt. 16 at 3, 7-8.

As to Claim C, Birdo also described this claim in his post-conviction petition for rehearing before the Illinois Appellate Court, again framing the claim as one for ineffective assistance of appellate counsel. Dkt. 23-1 at 4. In the petition, Birdo argued that Belcher was ineffective for "fail[ing] to brief and preserve defendant-appellant's allegation made in his post-conviction petition that he had a Sixth Amendment right to ask at trial 'What would happen if an officer struck an inmate without provocation?,' that was objected to and sustained and hindered his defense." *Id.* Birdo also raised the issue in his petition for leave to appeal to the Illinois Supreme Court, in which he again framed the issue as part of a claim for ineffective assistance of

appellate counsel. Dkt. 15-11 at 5. Similar to Claims A and B, in his federal habeas petition and reply brief, Birdo frames Claim C as a violation of his Sixth Amendment right to ask the question, but not as a claim for ineffective assistance of appellate counsel. Dkt. 1 at 6; Dkt. 16 at 3, 9.

Whether Birdo's claims are construed as claims that his post-conviction appellate counsel was ineffective or as claims of direct error, there is no basis to find them procedurally barred. If the former, there was no procedural default because Birdo raised his claim about the ineffectiveness of post-conviction counsel at his first opportunity, namely in his petition for rehearing after the Appellate Court issued its ruling; he then reasserted that claim in his petition for leave to appeal to the Illinois Supreme Court. And if the latter, there is no basis to invoke procedural default because no Illinois court denied the claim on that basis. Under Illinois law, Birdo's failure to raise Claims A, B, and C could have resulted in dismissal of the claims by the Illinois Appellate Court. *See, e.g.*, *People v. Jolly*, 374 Ill. App. 3d 499, 505 (2007) (holding that defendant forfeited claim not raised below). Nevertheless, the Illinois Appellate Court and the Illinois Supreme Court did not address this procedural default in the summary denials of Birdo's petitions. A claim is only procedurally defaulted if the state court clearly and plainly relies on the default as an independent and adequate state law ground for its ruling. *See Coleman*, 501 U.S. at 730; *see also Braun*, 227 F.3d at 912 (the state court must have actually and "clearly and expressly" relied on the procedural default as the basis of its ruling, otherwise the procedural default will not bar federal habeas review).

The procedural default rule is grounded in principles of comity; where the state court has not seen fit to invoke the petitioner's procedural default under state law, comity compels respect for that approach rather than an effort to enforce a procedural rule the state court opted not to

apply. *See Coleman*, 501 U.S. at 730–31. Accordingly, the Court concludes that Claims A, B, and C are not procedurally defaulted.

### B. Claim A – Substitution of Judge at Trial – Is Cognizable But Fails on the Merits.

In his habeas petition, Birdo claims that the motion he brought to substitute the trial judge was improperly denied. Birdo argues that he had an absolute right to substitute the judge under 725 ILCS 5/114-5(a), which states, in relevant part,

> Within 10 days after a cause involving only one defendant has been placed on the trial call of a judge the defendant may move the court in writing for a substitution of that judge on the ground that such judge is so prejudiced against him that he cannot receive a fair trial. Upon the filing of such a motion the court shall proceed no further in the cause but shall transfer it to another judge not named in the motion.

Birdo states in his reply brief that the denial of his motion caused his due process rights under the Fourteenth Amendment to be violated. Dkt. 16 at 4, 6-7. He adds that Judge Coogan, the Logan County Circuit Court judge who presided over the first and second trials, was prejudiced against him at his second trial because he heard Birdo testify and required him to wear full upper-body restraints at the first trial. *Id.* at 5. At the second trial, Birdo argues, Judge Coogan again required Birdo to wear leg shackles in full view of the jury. *Id.* Finally, Birdo argues that "[h]ad Judge Coogan not sat on the new trial the outcome would have been different." *Id.* at 7.

The respondent argues that Claim A is not cognizable on federal habeas review because Birdo presents solely a question of state law, namely, a state procedural rule. Dkt. 14 at 12. The respondent adds that Birdo expressly acknowledged in his federal habeas petition that any right conferred by § 5/114-5(a) "was a state-created right." *Id.* at 13.

#### 1. Claim A is Cognizable.

In a federal habeas proceeding, a federal court may only consider a petitioner's claims that he is in custody in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C.A. § 2254(a). In other words, "errors of state law in and of themselves are not cognizable on habeas review." *Perruquet v. Briley*, 390 F.3d 505, 511 (7th Cir. 2004) (citing *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991)). Construed as a claim based solely on the denial of a procedural right provided by state law, Birdo's claim would fail because it is not cognizable on federal habeas review.

A defendant has a Fourteenth Amendment due process right to a fundamentally fair trial, however, but only if the state court committed an error "so serious as to render it likely that an innocent person was convicted can the error be described as a deprivation of due process." *Id.* at 510-511 (citations omitted). Birdo's claim concerning the improper denial of his motion to substitute the trial judge implicates due process, since a fair trial requires an impartial judge free from personal conviction as to the guilt or innocence of the accused. *See People v. Robinson*, 18 Ill. Ap. 3d 804, 808 (1974). Although Birdo did not specify a connection between his claim and due process in his habeas petition, and in fact referenced a "state-created right," he also referenced due process multiple times in his reply brief. Dkt. 16 at 4, 6-7. Construing Birdo's claim liberally, as required—*see, e.g.*, *Ward v. Jenkins*, 613 F.3d 692, 697 (7th Cir. 2010)—the Court concludes that Birdo adequately alleges a due process violation arising from the trial judge's denial of the substitution motion. Further, Birdo's *pro se* filings do not eliminate the constitutional dimension to a defendant's motion to substitute the judge, as confirmed by the Illinois Supreme Court. *See People v. Evans*, 209 Ill. 2d 194, 215 (2004) ("[S]ection 114-5(a) involves defendant's right to a fair trial, a right of a constitutional dimension …."). In sum,

Birdo's claim is cognizable on federal habeas review, as it is inherently a due process claim and he stated as much in his reply and throughout his references to this issue since his second trial.

### 2. Claim A Fails on the Merits.

The Illinois Appellate Court summarily denied Birdo's petition for rehearing, including his substitution of judge claim. No. 4-10-0198 (Ill. App. Ct. 4th Dist. Nov. 9, 2011). If a state court summarily disposes of a claim without setting forth the legal or factual basis for its denial, the federal habeas court should follow the pre-AEDPA standard of review as stated in 28 U.S.C. § 2243, which requires the Court to "dispose of the matter as law and justice require." *Myartt v. Frank*, 395 F.3d 782, 783-84 (7th Cir. 2005) (where the state court of appeals did not address the petitioner's claim, the federal court should apply the pre-AEDPA standard of review) (citing *Braun v. Powell*, 227 F.3d 908, 917 (7th Cir. 2000)).

Whether construed as a due process claim or not, Birdo's argument that he was improperly denied a substitution of the trial judge fails. As a due process claim, the claim fails because his assertions that the trial judge was biased against him are insufficient for this Court to consider relief. In support of his claim, Birdo asserts only that the judge was biased because (i) he had heard Birdo's testimony; and (ii) the judge forced Birdo to sit shackled and in full upper-body restraints at his first trial. Dkt. 16 at 4-5. The Due Process Clause guarantees litigants an impartial judge. *See Montgomery v. Uchtman*, 426 F.3d 905, 910 (7th Cir. 2005) (citations omitted). Further, a judge must recuse himself when he has a "bent of mind that may prevent or impede impartiality of judgment." *United States v. Barnes*, 909 F.2d 1059, 1071-72 (7th Cir. 1990) (citation omitted). An allegation of partiality, however, "must not … be mere conclusions, opinions, or rumors … [T]he bias [must be] personal rather than judicial." *Id.* at 1072.

Here, the fact that Judge Coogan presided over Birdo's first trial is of no consequence to Birdo's due process rights. *See, e.g.*, *Lasley v. Hanks*, 78 F.3d 586, 586 (7th Cir. 1996) (habeas petitioner was not denied due process where state judge refused to recuse himself because "there is nothing constitutionally untoward about the same judge presiding over successive trials with the same defendant"); *see also, e.g., People v. Melka*, 319 Ill. App. 3d 431, 442-43 (2000) (trial court did not deny defendant due process by denying motion to substitute judge that was based on judge's previous participation in earlier trial for same defendant on same charge).

Further, Birdo's assertion that the judge showed bias by forcing him to sit in restraints does not rise to the level of a due process violation. A criminal defendant has the right to appear before a jury free from shackles or other physical restraints. *U.S. v. Van Sach*, 458 F.3d 694, 699 (citing *Illinois v. Allen*, 397 U.S. 337, 344 (1970)). This right, however, is not absolute. *See id.* (citing *Holbrook v. Flynn*, 475 U.S. 560, 567-68 (1986)). "The right to be free from shackles at trial 'may be overcome in a particular instance by essential state interests such as physical security, escape prevention, or courtroom decorum.'" *Id.* (quoting *Deck v. Missouri*, 544 U.S. 622, 629 (2005)). Judge Coogan required Birdo to wear leg shackles and handcuffs at the first trial because of the "nature of the charge" and not "unfair prejudice." Dkt. 15-15 at 3-4. Responding to Page's request, Judge Coogan told the jury panel, before selection, that Birdo was wearing handcuffs and leg shackles because of "routine policy when someone is being held in custody … and when they come to trial." *Id.* at 7. He added that it was "not any evidence of guilt." *Id.* After trial, Judge Coogan granted Birdo's motion for a new trial due, in part, to the restraints that Birdo was required to wear at the first trial. Dkt. 15-17 at 2. For the second trial, Judge Coogan ordered that Birdo wear leg shackles but not handcuffs or a waist chain. Dkt. 15-13 at 24. He noted that the leg shackles would be obscured by a curtain and that he would allow

20

Birdo to relocate to the witness stand outside the presence of the jury. *Id.* at 24-25. He based his decision on the fact that there were "allegations of crimes of violence, prior crimes of violence, and allegations here of violence against correctional officers." Dkt. 15-13 at 26-27. He concluded, "I find that my responsibility for the safety of the people in the courtroom overrides the freedom here for the leg irons." *Id.* at 27. Judge Coogan's rulings as to the restraints issue were sufficiently thorough and reasoned, and he cited physical security as one of his reasons. *See Van Sach*, 458 F.3d at 699. Further, he was flexible in responding to requests from Page to adjust his rulings in an effort to reduce prejudice to Birdo. Birdo has therefore not shown sufficient bias on the restraints issue to frame a due process violation.[10]

And even if Birdo could proceed on this claim based on the requirements of the statute itself (and he cannot, as that is an issue of state, not federal, law), the claim would fail because Birdo did not seek the substitution within the time period authorized by the Illinois statute. Birdo raised the issue with the trial judge orally and *pro se* (without Page's adoption) on the morning of his second trial (November 17, 2003), based on a motion that he apparently had signed, notarized, and filed on November 12, 2003. Dkt. 15-6 at 149.[11] Birdo asserts that he was entitled to an automatic, non-discretionary order of substitution pursuant to 725 ILCS 5/114-5(a), but he

---

[10] Judge Coogan stated in denying Birdo's motion to dismiss the indictment, "This case is an old case. It is ready for trial … You were convicted by a jury here … I said you need to have another trial. Now, if you think there was a mistake on that, I suppose we can go back and reinstate the prior verdict. I don't think that is what you want, but I'm not going to dismiss this case." Dkt. 15-13 at 40-41. Birdo did not point to this statement as the basis for his motion when he first made the substitution motion (immediately after Judge Coogan's statement) or at any later point in his pleadings. And while a bit sarcastic, the statement does not provide sufficient prejudice to sustain a claim. *See, e.g., People v. Berry*, 241 Ill. App. 3d 993, 996, 997-98 (1993) (judge not prejudiced where he stated that he "had an idea how the jury might rule"); *People v. Damnitz*, 269 Ill. App. 3d 51, 53, 58 (1994) (judge not prejudiced where he told jury after verdict that he would have convicted defendant of charge on which jury had acquitted).

[11] The motion is file-stamped with the date November 17, 2003. Dkt. 15-6 at 149.

simply filed his motion for substitution too late. The statute provides that motions for substitution must be filed "within 10 days after a cause involving only one defendant has been placed on the trial call of a judge." 725 ILCS 5/114-5(a); *Evans*, 209 Ill. 2d at 216 (defendant's motion for automatic substitution of judge made on first day of trial was untimely). Further, the Illinois Supreme Court has held that "a request for automatic substitution must be made before the trial judge rules on a substantive matter." *People v. Jones*, 197 Ill.2d 346, 353 (2001) (in *People v. Emerson*, 122 Ill.2d 411, 424 (1987), "we held that remand is considered a continuation … [S]ubstantive rulings made in Emerson's first trial served as substantive rulings in his second trial and made a subsequent motion on remand for automatic substitution untimely.") Here, Birdo did not make his motion until after his first trial and just before his second trial. Judge Coogan had already made many substantive rulings, beginning with rulings made before and during Birdo's first trial. Birdo's motion for substitution was therefore untimely.

Claim A, in sum, fails on the merits.

## C. Claim B – Supreme Court Rule 13 Violation – Is Not Cognizable.

Birdo next alleges that his first two public defenders violated Illinois Supreme Court Rule 13 by leaving his case without filing motions to withdraw. Illinois Supreme Court Rule 13 states, in relevant part,

> An attorney may not withdraw his appearance for a party without leave of court and notice to all parties of record, and, unless another attorney is substituted, he must give reasonable notice of the time and place of the presentation of the motion for leave to withdraw, by personal service, certified by mail, or a third-party carrier, directed to the party represented by him at his last known business or residence address.

ILCS S. Ct. Rule 13(c)(2). Birdo asserts that he was not notified of the departure of his two attorneys and that he did not know who was representing him at certain times. Dkt. 1 at 5. He further asserts that a list of witness names that he sent to one attorney was lost after that attorney left his case, and that this loss prejudiced him because he was unable to call those witnesses at trial. *Id.* In his reply brief, Birdo asserts that his due process rights were violated when each attorney withdrew from his case without notifying him. Dkt. 16 at 8.

The respondent argues that Claim B is not cognizable on federal habeas review because Birdo presents solely a question of state law, namely, a state procedural rule. Dkt. 14 at 12-13. In a federal habeas proceeding, a federal court may only consider a petitioner's claims that he is in custody in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C.A. § 2254(a). In other words, "errors of state law in and of themselves are not cognizable on habeas review." *Perruquet*, 390 F.3d at 511 (citing *Estelle*, 502 U.S. at 67–68).

The Court agrees with the respondent that Claim B is not cognizable. Birdo cites to Illinois Supreme Court Rule 13 and makes references to due process in certain of his pleadings. Yet a violation of Illinois Supreme Court Rule 13 does not implicate Birdo's constitutional rights, and in particular his right to counsel, because the rule itself does not confer on Birdo a constitutional right to counsel. Without conferring such a right, Birdo cannot be deprived of a right by a violation of Rule 13. *See, e.g.*, *People v. Howard*, 376 Ill. App. 3d 322, 342-43 (2007) (defendant's constitutional right to counsel not violated when trial court permitted attorney to withdraw because of counsel's strong desire to be released). Further, Birdo was at all times represented by the Logan County Public Defender. Since Birdo did not have the right to be represented by a particular public defender within the Logan County Public Defender's Office, he could not be deprived of that right either. *See People v. DeRossett*, 262 Ill. App. 3d 541, 543-

44 (1994) (an indigent defendant does not have a right to court-appointed counsel of his choice, nor does a defendant have the right to select a particular assistant public defender to represent him) (citations omitted). Birdo had counsel at all times. That one attorney failed to formally withdraw after another had assumed the representation did not violate Birdo's right to counsel under the Sixth Amendment and Claim B is therefore denied as not cognizable.

### D. Claim C – Prosecutor's Sustained Objection to Question Regarding Strike Without Provocation – Is Not Cognizable.

In his third claim, Birdo asserts that the trial court prevented him from pursuing a defense and violated his right to confrontation when it prevented Page from impeaching Officer Cowan on cross-examination with evidence that he had a potential motive to testify falsely. Specifically, the trial judge sustained the state's objection to the following cross examination:

> PAGE: Q [Posed to Craig Cowan]: What would happen to a correctional officer if without provocation they put their hands on an inmate or assaulted an inmate? What would happen?

> WRIGHT: I am going to object, your Honor. I don't think it is relevant. There has been no evidence offered to show that is even a relevant issue.

> THE COURT: Objection sustained.

Dkt. 15-13 at 152. Birdo argues that if the objection was instead overruled, Birdo would have been able to present a defense that the officers were lying to avoid being disciplined for the incident. Dkt. 16 at 9.

The respondent argues that Claim C is not cognizable on federal habeas review because Birdo presents solely a question of state law, namely, an evidentiary ruling by the state trial court. Dkt. 14 at 13.

Evidentiary rulings of state trial courts are normally not subject to habeas review. *See Dressler v. McCaughtry*, 238 F.3d 908, 914 (7th Cir. 2001). The Due Process Clause does not

permit a federal court to "engage in a finely tuned review of the wisdom of state evidentiary rules." *Estelle*, 502 U.S. at 72 (citation omitted). A defendant has a Fourteenth Amendment due process right to a fundamentally fair trial but only if the state court committed an error "so serious as to render it likely that an innocent person was convicted" and only then "can the error be described as a deprivation of due process." *Perruquet*, 390 F.3d at 510-511 (citations omitted); *see also Dressler*, 238 F.3d at 914 (*citing Thompkins v. Cohen*, 965 F.2d 330, 333 (7th Cir. 1992)).

Construing Birdo's claim liberally, Birdo does not come close to showing that the state trial court's ruling is subject to habeas review. *See, e.g.*, *Ward v. Jenkins*, 613 F.3d 692, 697 (7th Cir. 2010). Although Birdo ties his claim to due process several times in his reply brief, at issue is a single question, which was prevented from being answered by a run-of-the-mill evidentiary ruling by the trial court. A single question not asked, whether prohibited in error or not, does not render it likely that Birdo was wrongly convicted and therefore cannot be described as a deprivation of due process. *Perruquet*, 390 F.3d at 510-11. And in any event, the question was not necessary to the jury's determination of Birdo's guilt or innocence. Whether or not this particular question was asked of Officer Cowan, the jury did not need this testimony to infer that if a guard punched an inmate for no reason at all, the guard would be at risk of disciplinary action. Rather, the question was squarely in the realm of the jury's common sense. For these reasons, Claim C is denied as not cognizable.

### E. Claim D – Ineffective Assistance of Counsel.

The Court turns now to Birdo's claim for ineffective assistance of counsel. Birdo asserts that his trial attorney, Page, was ineffective for failing to investigate a potentially exculpatory witness, bus driver and correctional officer David Young.

1.      **The History of the Claim.**

Birdo has been raising this claim and facts related to this claim since before his first trial.

The following is a brief history of the claim:

- **Pre-Trial Statements of Witnesses Corroborating Birdo's Allegation that the Bus Driver Was on the Bus and Involved in the Incident:**

  o **Mauricio Rivas:** "I don't remember exactly what that officer said in response, but I remember it being some type of rude and callous comment because it even made me mad." Dkt. 15-6 at 44.

  o **Lonnie Henry**: "I also heard the c/o that drove the bus tell the c/o involved in the incident not to worry, 'that they'll take care of it and nobody will believe a[n] inmate just be cool and don't do nothing else.'" Dkt. 15-6 at 51.

- **August 2002 First Trial**: Birdo testified, "I believe the bus driver said – he made some type of derogatory statement … I'm not sure exactly what he said, but he made a statement that was – I guess you could say it was racial. I mean, he said something about I guess we're going to have some fudge sickles, or something like that, for dessert." "Q: Okay, and you don't know who said that? A: I believe it was the bus driver." Dkt. 15-5 at 190.

- **November 2003 Pre-Trial Motions**: Birdo raised three *pro se* motions on the morning of his second trial, including a motion to dismiss the indictment in part because "Page did not promptly comply with the defendant's reasonable request for information regarding the bus driver whose name the defendant does not know, but is absolutely sure was physically involved and present during the entire alleged incident. During the trial the defendant informed his attorney that Mr. Cowan was not involved but instead a bus driver was. After the trial the defendant requested information regarding the bus driver and after the new trial was ordered the defendant still sought information regarding this material witness and this request was never responded to or fulfilled by Mr. Jeff Page." Dkt. 15-13 at 34. In Birdo's motion for a continuance, he wrote that he needed a "substantial continuance to ascertain the bus driver's name and whereabouts …." Dkt. 15-6 at 229.

- **November 2003 Second Trial:**[12] Birdo testified, "The bus driver interjected and said some type of derogatory comment and they laughed about it. He said

---

[12] Page mentioned the presence of Young in his closing argument: "… an interesting point I suppose the theory is by the prosecution that Mr. Birdo struck Officer Wagner because he was cold because he wanted on the bus. Yet it was interesting according to Kevin, and I don't

something to the effect that I felt racially insensitive. I don't know if he meant it to be, but he said something to the effect I guess we are going to have fudge sickles for dessert. He and the other officers laughed about it." Dkt. 15-13 at 166-67.

- **July 2005 Direct Appeal:** Birdo raised a claim for ineffective assistance of counsel as to Page for failing to call certain witnesses, including Young, in his brief before the Illinois Appellate Court and in his Petition for Leave to Appeal to the Illinois Supreme Court. Dkt. 15-2 at 15, 17; Dkt. 14-5 at 11, 14.

- **July 2006 Post-Conviction:** In his *pro se* state court post-conviction petition, Birdo raised a claim for ineffective assistance of counsel as to Page for failing to interview several important witnesses, including Young. In his December 2008 amended petition (submitted by appointed counsel Wray), Birdo raised the claim as to Page for failing to investigate whether Young was present or had knowledge of the incident. Dkt. 15-6 at 221, 267-70.

- **March 2010 Evidentiary Hearing:** Page, the only witness called by Birdo's post-conviction trial counsel (Wray), testified (as summarized above at 9-10) that he did not believe he had a report from the state regarding the bus driver, and that "quite frankly from my recollection I don't recall him ever giving a statement that would suggest that he knew anything about this altercation, that he saw it, or was even present for this alleged altercation." Page further testified that Birdo told him that Young was present during the incident and that he "guess[ed]" he could have tracked Young down. Dkt. 15-21 at 19-21, 23-24. The circuit court granted the State's motion for a directed finding but did not mention Young in its oral pronouncement. Dkt. 15-21 at 29-32.

- **Post-Conviction Appeal:** Birdo raised a claim for ineffective assistance of counsel as to Page for failing to investigate Young in his brief before the Illinois Appellate Court (Dkt. 15-7 at 11-14), in his *pro se* petition for rehearing before the Illinois Appellate Court (Dkt. 23-1 at 2-3), and his *pro se* petition for leave to appeal to the Illinois Supreme Court (Dkt. 15-11 at 4-5).

The Illinois Appellate Court reviewed Birdo's ineffective assistance of counsel claim on the merits after the trial court denied the claim following the evidentiary hearing. In its written order of October 14, 2011, the appellate court described Page's testimony at the evidentiary

---

know if that was adopted by the prosecutor, but apparently there was a comment made to Kevin by the bus driver much more egregious I would think than that. Kevin Birdo never struck out at the bus driver for making some type of derogatory remark. He didn't do that." Dkt. 15-14 at 238.

hearing held in the Logan County Circuit Court. The appellate court wrote that Page "acknowledged that defendant had told him that Young was present during the incident and admitted he could have 'track[ed] him down.'" Dkt. 15-10 at 5. The appellate court added:

> In its oral pronouncement, the [circuit] court did not analyze or mention Page's conduct of not contacting Young. However, we find the court's analysis would apply equally to Young. Page indicated he did not contact Young, though he could have "track[ed] him down," because references in the discovery and testimony at the first trial indicated that Young had no knowledge of the incident. (We note that testimony at the second trial also indicated Young was not on the bus at the time of the incident.) Failing to investigate a witness that purportedly had no knowledge cannot constitute substandard performance … Further, as the circuit court noted, defendant failed to present evidence that would demonstrate that he was prejudiced by counsel's alleged ineffectiveness. He did not produce any information to the court by way of testimony or affidavits that would have revealed the extent of Young's knowledge or the nature of his proposed testimony had he been called as a witness … Defendant failed to demonstrate that the outcome of his trial would have been different had Page contacted Young. Without more, defendant cannot establish a successful claim that Page rendered ineffective assistance of counsel by not investigating Young's involvement in or knowledge of the incident.

Dkt. 15-10 at 9-10. The appellate court further found that Birdo's claim for ineffective assistance of appellate counsel as to post-conviction counsel Wray—for not presenting testimony or statements from Young and other witnesses at the evidentiary hearing—also failed. *Id.* at 10-11. The appellate court stated that Wray could not be deemed ineffective for failing to perform a futile act, made futile because Page testified at the evidentiary hearing that he made a reasonable professional judgment not to investigate Young's involvement. *Id.* at 10.

### 2. The Illinois Appellate Court's Application of *Strickland* Was Unreasonable.

Where a federal habeas court reviews a state court's adjudication of a petitioner's ineffective assistance claim on the merits, 28 U.S.C. § 2254(d) applies and the question is

"whether the state court's application of the *Strickland* standard was unreasonable."[13] *Harrington v. Richter*, 131 S. Ct. 770, 785 (2011); *see also Malone v. Walls*, 538 F.3d 744, 758-59 (7th Cir. 2008) ("[T]he petitioner must establish that '[t]he state court's application of *Strickland* [was] objectively unreasonable and not merely erroneous.'") (citations omitted). Further, when AEDPA's "highly deferential" standard for review of a state court's application of federal law applies in tandem with *Strickland*'s "highly deferential" standard for an attorney's performance, "review is 'doubly so.'" *Harrington*, 131 S. Ct. at 788 (citation omitted). Thus, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

This Court first finds that under § 2254, the Illinois Appellate Court correctly stated the *Strickland* standard, and so the court's decision is not contrary to clearly established federal law.[14] *See Malone*, 538 F.3d at 757-58.

This Court concludes, however, that the Illinois Appellate Court's application of *Strickland* to the facts before it was unreasonable. As an initial matter, the state court speculated, with no basis whatsoever, that the circuit court's "analysis would apply equally to Young." Dkt. 15-10 at 9. The fact of the matter is that the circuit court did not apply its analysis to Page's alleged failure to investigate Young, and to guess that the circuit court intended to address the

---

[13] This Court reviews the opinion of the Illinois Appellate Court, the last state court to rule on the merits of the issue. *See Schultz v. Page*, 313 F.3d 1010, 1015 (7th Cir. 2002) ("a federal court reviewing a habeas petition should examine the decision of the last state court to rule on the merits of the issue.").

[14] Under *Strickland*, "the right to counsel is the right to the effective assistance of counsel." *Missouri v. Frye*, 132 S. Ct. 1399, 1404 (2012). To establish a claim under *Strickland*, Birdo must show that he received deficient assistance, and that there was prejudice as a result. *Strickland v. Washington*, 466 U.S. 668, 690 (1984).

Young issue in the same manner, in addition to the other witnesses the circuit court did address, is flatly unreasonable given the state of the record. *See Taylor v. Grounds*, 721 F.3d 809, 822 (7th Cir. 2013) (holding that trial court's sparse decision containing no mention of fact and no application of law to issue at hand could not support the higher court's determination).

### a. The state court unreasonably applied *Strickland* as to Page's performance.

Under *Strickland*, a petitioner must first show that his counsel's performance "fell below an objective standard of reasonableness." 466 U.S. at 688. Review of an attorney's performance is "highly deferential and reflects a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance … So long as an attorney articulates a strategic reason for a decision that was sound at the time it was made; the decision generally cannot support a claim of ineffective assistance of counsel." *Yu Tian Li v. United States*, 648 F.3d 524, 527-28 (7th Cir. 2011). "But the presumption applies only if the lawyer actually exercised judgment." *Mosley v. Atchison*, 689 F.3d 838, 848 (7th Cir. 2012). If a trial attorney's investigation of a potential witness was unreasonably limited, trial counsel's decision not to investigate a particular witness is "too ill-informed to be considered reasonable." *Stitts v. Wilson*, 713 F.3d 887, 891 (7th Cir. 2013) (citing *Mosley*, 689 F.3d at 848). Here, there is no evidence that Page made a considered judgment not to interview Young to find out what he would say (and, indeed, it is difficult to understand what the downside to conducting such an interview might have been, particularly given Page's acknowledgement that it would not have been hard to do).

To begin, Page plainly had reason to believe that Young may have been present during the alleged battery. There is ample evidence in the state record that Page ignored Birdo's pleas to investigate Young and that Page knew, from various sources, that Young was a potentially

exculpatory eyewitness. Before Birdo's first trial, for example, Page was in receipt of, and filed with the court on August 6, 2002 (Dkt. 15-6 at 37), two witness statements from inmates who claimed to be eyewitnesses and pointed to the bus driver's presence during the incident. *See* Rivas Stmt. (Dkt. 15-6 at 44) ("I don't remember exactly what that officer said in response, but I remember it being some type of rude and callous comment because it even made me mad."); *see also* Henry Stmt. (Dkt. 15-6 at 51) ("I also heard the c/o that drove the bus tell the c/o involved in the incident not to worry, 'that they'll take care of it and nobody will believe a[n] inmate just be cool and don't do nothing else.'"). At the first trial, Page continued to hear about Young when Birdo testified that he believed it was the bus driver who made a racially derogatory comment when Birdo attempted to get on the bus. Dkt. 15-5 at 190 ("I believe the bus driver said – he made some type of derogatory statement … [H]e said something about I guess we're going to have some fudge sickles, or something like that, for dessert."). On the morning of his second trial, Birdo told the trial court that Page refused to investigate Young, and filed with the court a motion for a continuance so that Young could be investigated. Dkt. 15-13 at 34 ("After the trial the defendant requested information regarding the bus driver and after the new trial was ordered the defendant still sought information regarding this material witness and this request was never responded to or fulfilled by Mr. Jeff Page."); Dkt. 15-6 at 229 ("[D]efendant disclosed information to his attorney Jeff Page concerning a bus driver … [T]he defendant needs a substantial continuance to ascertain the bus driver's name and whereabouts …."). Page ultimately admitted at the post-conviction evidentiary hearing that Birdo had told him about Young (Dkt. 15-21 at 23 ("Mr. Birdo did mention that, yes.")) and that he could have tried to locate Young in order to determine what he would say about the incident. *Id.* at 24.

The only evidence in the state record that would support the Illinois Appellate Court's reasoning as to Page's performance is Page's testimony at the evidentiary hearing that "references in the discovery and testimony at the first trial indicated that Young had no knowledge of the incident." Dkt. 15-10 at 9. The appellate court's reliance on this fact over other facts showing that Young was present during the incident was unreasonable for at least two reasons. First, so far as the record indicates, there are no "references in the discovery" that Young had no knowledge of the incident. The State's discovery, on which Page purported to rely, included no reference to Young one way or another (the State has identified none and the Court has found none in the record), but the appellate court treated this absence of evidence as affirmative evidence that Young had no knowledge of the incident (*i.e.*, that he was not present). But "absence of evidence is not evidence of absence." *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 254 (D.C. Cir. 2013); *United States v. Harris*, 2009 WL 3055331, at *3 (N.D. Ill. Sept. 21, 2009) (Zagel, J.). Even standing alone, this was an unjustifiable inference, but all the more so when there was in fact evidence—in the form of two witness affidavits—asserting that Young *was* present. The appellate court noted several times that there was testimony at both trials from correctional officers who stated that Young was not present at the time of the incident, but Page never cited that testimony as a basis for his decision not to talk to Young. In any event, the cold record provides no basis for the appellate court to have credited the testimony of the officers over that of Birdo and Rivas. Further, contrary to the appellate court's statement that "two witnesses testified at defendant's trials that Young was not present during the incident," only Officer Cowan affirmatively testified at both trials that Young was not present. While Officer Wagner listed the officers involved in the incident, at neither trial did he affirmatively testify that Young was not present. Dkt. 15-13 at 82; Dkt. 15-15 at 132-33. There

32

was, in short, no basis for the appellate court's holding that a failure "to investigate a witness that purportedly had no knowledge cannot constitute substandard performance." That statement is true enough, but beside the point. Birdo's complaint (all along) has been that Young **had** knowledge; the appellate court simply assumed that he did not and never considered the question of whether Page was deficient in failing to confirm that fact.

Plainly, he was. Page did not offer a justification for failing to interview Young that was based on trial strategy, or any other rationale, at the evidentiary hearing. Rather, his decision to rely solely on the absence of information in the State's discovery, and to ignore information from his own client, corroborated by two witnesses, was enough to provide the appellate court with evidence of Page's substandard performance; "[f]ew decisions not to present testimony can be considered 'strategic' before some investigation has taken place." *United States v. Best*, 426 F.3d 937, 946 (7th Cir. 2005). *See, e.g., Stitts,* 713 F.3d at 892-94 (failure to investigate potential alibi witnesses held to be objectively unreasonable); *Mosley*, 689 F.3d at 848-49 (same); *Malone v. Walls*, 538 F.3d 744, 761-62 (7th Cir. 2008) (noting that "despite the importance of the evidence … the record does not suggest a concrete reason why [defendant's] counsel chose not to call [the witness]"); *Hampton v. Leibach*, 290 F. Supp. 2d 905, 923 (N.D. Ill. 2001) (Kennelly, J.) (unreasonable defense found where attorney "failed to follow up with the witnesses whose names [the defendant] had given him."); *Bryant v. Scott*, 28 F.3d 1411, 1415 (5th Cir. 1994) ("[F]ailure to interview eyewitnesses to a crime may strongly support a claim of ineffective assistance of counsel.") (citations omitted); *Sullivan v. Fairman*, 819 F.2d 1382, 1391-92 (7th Cir. 1987) (holding that defense counsel's performance was insufficient where counsel made only perfunctory attempts to locate exculpatory witnesses of which he was aware and because "counsel had reason to know, from an objective standpoint, that a possible defense … [was]

available.") (citation omitted). In sum, the state court's finding that Page's failure to determine what, if anything, Young witnessed did not constitute substandard performance was an unreasonable application of the first prong of *Strickland*.

> **b.** **The state court unreasonably applied *Strickland* when it found no prejudice.**

As to prejudice, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* It is not enough to show that "the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. In other words, the likelihood of a different result must be substantial, not just conceivable. *Id.* at 693.

The problem Birdo faces here, as the respondent points out, is that he presented no evidence to the state courts to establish that Page's failure to investigate Young resulted in prejudice to Birdo. The respondent maintains that Birdo's failure to proffer an affidavit by Young in state court establishing what his testimony would be is fatal to his claim of prejudice.

But that is only true if the state court's application of the prejudice prong of *Strickland* was within the bounds of reason. Here, it was not. The state appellate court assumed, based on the evidence before it, that Young would have been an unhelpful witness ("a witness that purportedly had no knowledge," Dkt. 15-10 at 9), but, as already discussed, there was virtually no basis to draw that conclusion. The court did not know what, if anything, Young had to say about the incident. It follows that the appellate court could not know, without assuming, whether Young's testimony would create a reasonable probability that the outcome of Birdo's trial would have been different. No fair-minded jurists could disagree on this point. *See Harrington*, 131 S.

Ct. at 786 ("A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness" of the state court's decision) (citation omitted).

The appellate court could just as easily have assumed the presence of prejudice. The state's case at the second trial rested heavily on the testimony of two correctional officers, Wagner and Cowan, and Birdo's case rested heavily on his own testimony. In the state's closing, the prosecutor pointed to this fact: "You have heard the testimony of Officer Wagner and of Officer Cowan, and if we can just boil this case down to its basic elements, this case really comes down to who are you going to believe. You have their testimony contrasted against that of the defendant." Dkt. 15-14 at 219. If Page had at least interviewed Young, as Birdo repeatedly requested, Birdo may have then called Young as a corroborating witness and a fairer contest at trial may have ensued. Instead of a one-sided version of events, there may have been a contest between competing eyewitness testimony, and a reasonable probability that a jury would have reasonable doubt as to Birdo's guilt. *See Stitts*, 713 F.3d at 894 (citing *Washington v. Smith*, 219 F.3d 620, 635 (7th Cir. 2000) ("All [the defendant] needed to do was establish a reasonable doubt, and having additional, credible alibi witnesses would have covered a lot of ground toward that goal")).

In *Stitts*, the Seventh Circuit confronted a similar situation. The petitioner asserted that his trial counsel was ineffective because, before deciding not to present an alibi defense, the attorney interviewed only one witness and failed to investigate any other witnesses. 713 F.3d at 888. In an affidavit, submitted as evidence at a state post-conviction hearing, the trial attorney stated that he recalled considering an alibi defense, "but ultimately ch[o]se not to pursue" it because "I do not recall there being any quality witnesses to testify on his behalf …." *Id.* at 890.

The affidavit did "not specifically mention the extent of his alibi investigation." *Id.* After the district court denied Stitts's habeas petition, the Seventh Circuit held that the state court unreasonably applied *Strickland* as to both prongs. *Id.* at 892-93. As to prejudice, the court noted that the prosecution's case "rested entirely" on two witnesses and that the defendant's version of events could have been corroborated by the testimony of additional witnesses. *Id.* at 894 ("[I]f these witnesses testified, the trial would have been transformed from a one-sided presentation of the prosecution's case into a battle between competing eyewitness testimony, where there would have been a 'reasonable probability' that a jury would have reasonable doubt as to [the defendant's] guilt and therefore acquit."). Further, the court found that the trial attorney's affidavit was "entirely silent about the extent of his investigation." *Id.* at 895. The state court "essentially assumed for the sake of argument that trial counsel's investigation was limited to [one witness], but concluded (unreasonably) that such a limited investigation would have passed constitutional muster anyway." *Id.* at 895. The court added, "Nor is the record so clear that we can simply answer this question as an appellate court." *Id.* The Seventh Circuit remanded the case to the district court to first determine the extent of trial counsel's investigation and then to determine *de novo* whether that investigation constituted ineffective assistance under *Strickland*. *Id.*

As in *Stitts*, the state appellate court in Birdo's case made an assumption on a record that suffers from a lack of critical information about the testimony of a potentially key witness. We know no more about what Young would have said about the incident had Page contacted him than the *Stitts* court knew about the potential alibi witnesses who may never have been interviewed in that case. Indeed, this case presents a stronger case for prejudice than did *Stitts*. There, the record left it unclear whether defense counsel had interviewed potentially critical

witnesses; *here*, the record makes clear that defense counsel did not. The state court's application of *Strickland*'s prejudice prong, therefore, was unreasonable under § 2254(d)(1).

### 3. An Evidentiary Hearing Under § 2254(e) May Be Necessary.

Now that this Court has found that the state appellate court unreasonably applied *Strickland*, what remains to be resolved is whether Birdo was *in fact* prejudiced; *i.e.*, whether there is a reasonable probability that Young's testimony would have altered the outcome of Birdo's trial. This significant factual question remains unanswered by the state courts and in the state court record before this Court. An evidentiary hearing under § 2254(e) therefore may be necessary to give both Birdo and the respondent an opportunity to develop evidence. *See Stitts*, 713 F.3d at 895 ("Remand [to review facts outside the state record and for an evidentiary hearing if necessary] is appropriate in situations like these because the state court did not make a critical factual finding to which we may defer."); *see also Quintana v. Chandler*, 723 F.3d 849, 852, 855 (7th Cir. 2013) (once a state court decision is found to be an unreasonable application of federal law, a federal court can benefit from an evidentiary hearing under § 2254(e)).

To be clear, the opportunity to develop this evidence is limited. First, this Court has enough information, based on the state record, to find that Page's performance was deficient. An evidentiary hearing would therefore be restricted to the unresolved question of whether Page's deficient performance with respect to investigating Young's potential testimony in fact prejudiced Birdo. The sole evidence that would be helpful to answer this question is what David Young would have said had Page asked him about the incident and whether that information would have corroborated Birdo's version of events. This evidence may be collected by finding and interviewing David Young and/or by identifying other evidence, if it exists, that shows what

Young would have said about the incident.[15] If Birdo's appointed counsel learns through investigation that Young's testimony would be unhelpful (for whatever reason) to answering the unresolved question facing this Court, an evidentiary hearing will not be necessary. If, on the other hand, Birdo's appointed counsel learns that Young's testimony (or any other evidence) will be helpful, an evidentiary hearing will be necessary. In other words, what, if anything, Young now has (or once had) to say about the incident is the critical question, and the only question that is potentially ripe for a hearing.[16]

In reaching this conclusion, the Court recognizes the limitations imposed by AEDPA on a federal habeas court's authority. Review by a federal court under § 2254(d) is limited to reviewing a state court's "adjudication on the merits." Recent Supreme Court precedent limits that review to "the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011). The Seventh Circuit's opinion in *Mosley v. Atchison* provides clear guidance to district judges on how to proceed in a habeas case in the post-*Pinholster* world. 689 F.3d 838 (7th Cir. 2012). "Where a district court properly finds that a state court's decision was contrary to or involved an unreasonable application of clearly established federal law, it must still answer the question underlying § 2254(a): whether a petitioner is actually 'in custody in violation of the Constitution or laws or treaties of the United States.'" 689 F.3d at 842. In other words, "*Pinholster* does not confine a district court's decision on that ultimate question under § 2254(a) to a limited state court record." *Id. See also Pinholster*,

---

[15] Rivas, Henry, and Hardaway were not raised as part of Birdo's claim for ineffective assistance of counsel in his federal habeas petition. Page's performance as to those potential witnesses, therefore, is not at issue, and in any event, Page testified about his considered reasons for not calling those witnesses during the state court post-conviction evidentiary hearing.

[16] The State, of course, will also have the opportunity at an evidentiary hearing to present any evidence relevant to the question of what Young's testimony about the incident would have been.

131 S. Ct. at 1412 (Breyer, J., concurring in part and dissenting in part) ("If the federal habeas court finds that the state-court decision fails (d)'s test (or if (d) does not apply), then an (e) hearing may be needed.").

Applying *Mosley*, this Court first assessed, above, whether Birdo properly established a case under § 2254(d) by looking only at the record that was before the state court. The Court found that Birdo was successful under § 2254(d)—the Illinois Appellate Court's decision was an unreasonable application of both prongs of *Strickland*. The next step is to determine whether Birdo is, in fact, in custody in violation of the Constitution or laws or treaties of the United States. To answer this question, the state record is insufficient. Despite holding its own evidentiary hearing, the Logan County Circuit Court refrained from making any findings of fact as to Young. As discussed above, that factual void then appeared in the Illinois Appellate Court decision. Dkt. 15-10 at 9 ("[T]he court did not analyze or mention Page's conduct of not contacting Young [but] we find the court's analysis would apply equally to Young."). The state record is ambiguous and does not provide this Court with certainty regarding whether or not Birdo is "in custody in violation of the Constitution or laws or treaties of the United States." *See Taylor*, 721 F.3d at 824 (remanding for an evidentiary hearing because "the state court did not make a critical factual finding to which we may defer."); *see also Stitts*, 713 F.3d at 896 (remanding for an evidentiary hearing not to determine whether state court unreasonably applied *Strickland* but to reach an issue the state court never addressed). This Court will consider additional evidence, if helpful and as limited by the restrictions mentioned above, presented at a federal evidentiary hearing to determine whether Birdo is entitled to relief. *See Mosley*, 689 F.3d at 854.

The AEDPA also generally bars federal courts from holding evidentiary hearings to supplement the record. 28 U.S.C. § 2254(e)(2). Where, however, "the 'fail[ure] to develop the factual basis of a claim in State court proceedings' can not be attributed to something the petitioner 'did or omitted,' Section 2254(e)(2) does not apply and it is then necessary to evaluate the request for an evidentiary hearing under pre-AEDPA standards." *Matheney v. Anderson*, 253 F.3d 1025, 1039 (7th Cir. 2001). "Under pre-AEDPA standards, a federal evidentiary hearing is required if (1) a habeas petitioner alleges facts which, if proved, would entitle him to relief and (2) the state courts – for reasons beyond the control of the petitioner – never considered the claim in a full and fair hearing …." *Id.* (citation omitted). *See, e.g., United States of America, ex rel. Owens v. Acevedo*, 2012 WL 1416432, at *13 (N.D. Ill. Apr. 23, 2012) (Pallmeyer, J.) (setting forth requirements under 2254(e)(2) after finding need for evidentiary hearing post-*Pinholster*).

Birdo meets these requirements. *First*, the failure to develop the factual basis of Birdo's ineffective assistance of counsel claim in state court cannot be attributed to something Birdo "did or omitted." Birdo has diligently *tried* to develop the facts of his claim in state court, raising the claim at every opportunity, including before his second trial while Page was present. Yet Birdo has been stymied by the choices of his trial counsel and post-conviction counsel. As an inmate whose only access to assistance was counsel who have apparently disregarded Birdo's claim as to Young, it is obvious that Birdo's efforts were limited by others and not by any action or omission on his part. Further, Birdo did not miss the opportunity to claim that his post-conviction counsel, Wray, was ineffective for failing to investigate Young, either. Birdo has tried, in the best way he could, to raise the issue of Young's presence; the failure to develop these facts in state court cannot be attributed to him.

*Second*, Birdo has alleged facts which, if proved, would entitle him to habeas relief. Birdo alleges that Page failed to investigate Young, a potentially exculpatory witness, despite Birdo's pleas. If Birdo is able to prove that Page's deficient performance did, in fact, prejudice him, Birdo would be entitled to relief. Birdo is being given an opportunity to cure a deficiency in the state court record, a deficiency that is not due to his own lack of due diligence. This Court, after finding that the state court's decision was unreasonable, will make a *de novo* determination regarding prejudice. The question that will face this Court is whether Birdo can show with the record he presents going forward that he was prejudiced by Page's failure to find out what Young would have said about the incident. *See Strickland*, 466 U.S. at 694 ("The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."). If Birdo cannot make that showing, which is his burden, his claim will fail on the merits. *See id.* ("a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.").

*Third*, because the facts regarding the potential prejudice caused by Page's deficient performance have always been undeveloped, the state courts never provided Birdo with a "full and fair hearing" as to his ineffectiveness claim. Although the state circuit court held an evidentiary hearing, Young was never presented to testify nor did he submit an affidavit describing his potential testimony. His knowledge, potentially exculpatory to Birdo (or perhaps not) was a mystery. The circuit court, then, was unable to evaluate the prejudice Birdo may have suffered due to Page's deficient performance, thus depriving Birdo of a "full and fair hearing" on this claim. These failures led to an undeveloped record—one which remains undeveloped today—regarding what Young would say had Page contacted him.

*Finally*, as to Birdo's failure to attach an affidavit in state court averring the substance of Young's testimony, the Illinois Appellate Court did not default Birdo for this potential error. Although the appellate court noted the absence of an affidavit from Birdo, Dkt. 15-10 at 9-10, it addressed the merits of Birdo claim in its entirety, without relying on the potential procedural error of the absent affidavit.[17] Because the state court chose to ignore this default, it poses no obstacle to this Court's consideration of Birdo's ineffectiveness claim. *See Coleman*, 501 U.S. at 730 (a claim is only procedurally defaulted if the state court clearly and plainly relies on the default as an independent and adequate state law ground for its ruling); *see also Braun*, 227 F.3d at 908 (the state court must have actually and "clearly and expressly" relied on the procedural default as the basis of its ruling, otherwise the procedural default will not bar federal habeas review).

\*      \*      \*

For the reasons set forth above, the Court will convene an evidentiary hearing if, after investigation, Birdo's newly appointed counsel reports that an evidentiary hearing will be helpful to determine whether Page's failure to investigate Young in fact prejudiced Birdo. All other claims set forth in the petition are denied. With resolution of a constitutional issue pending, the court declines to issue a certificate of appealability at this time. A status conference is set for December 17, 2013, at 9:00 a.m. to discuss a time table for counsel's investigation and any hearing that may be required.

---

[17] Rather, the appellate court considered the absent affidavit as part of its merits determination and, in particular, under the second prong of *Strickland*. Dkt. 15-10 at 9-10.

Entered: December 12, 2013

John J. Tharp, Jr.

United States District Judge