# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| United States of America ex rel.<br>  KEVIN BIRDO, | )<br>)<br>) | |
|           Petitioner, | )<br>) | No. 12 C 05748 |
| v. | )<br>) | |
| | ) | Judge John J. Tharp, Jr. |
| KIM BUTLER, Warden,<br>  Menard Correctional Center,[1] | )<br>)<br>) | |
|           Respondent. | )<br>) | |

## MEMORANDUM OPINION AND ORDER

Petitioner Kevin Birdo is currently incarcerated at Menard Correctional Center, where he is serving a sentence of seven and a half years for aggravated battery of a peace officer arising from an incident that occurred on a prison bus. Birdo brought a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, in which he raised four grounds for relief, three of which were denied in this Court's December 12, 2013 Memorandum Opinion and Order (Dkt. 33). As to the fourth claim, which was related to Birdo's trial attorney's ineffective assistance for failing to investigate whether the bus driver, David Young, could provide testimony corroborative of Birdo's account of the incident, the Court concluded that Birdo might be entitled to a limited evidentiary hearing. After an investigation by the petitioner's appointed counsel and a series of status hearings and filings in which the parties reported their respective positions, this Court denies Birdo's petition as to Claim D.

### I. BACKGROUND[2]

---

[1] The current warden of the Menard Correctional Center, Kim Butler, has been substituted for the original respondent, Marcus Hardy. *See* Fed. R. Civ. P. 25(d); Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts.

The facts relevant to this matter are set forth in detail in *Birdo v. Pfister*, 2013 WL 6514100 (N.D. Ill. Dec. 12, 2013). Here, the Court provides a short summary of only those facts that are relevant to Claim D. On March 27, 2000, a grand jury indicted Birdo for aggravated battery pursuant to 720 ILCS 5/12-4(b)(6). Birdo was tried and convicted of aggravated battery twice by a jury. Logan County assistant public defender Jeff Page was appointed to represent Birdo at both trials. The charge derived from an incident during the transfer of inmates at the Logan Correctional Center in Lincoln, Illinois on January 12, 2000. Birdo was charged with punching a correctional officer several times and spitting in his face next to the Menard Correctional Center transfer bus while it was stopped at Logan. One officer testified at both trials that the driver of the bus was Officer David Young, but that Young was not on the bus at the time of the incident. Dkt. 15-15 at 140, 147. Birdo testified at his first trial that when he attempted to board the bus because he was cold, "I believe the bus driver said – he made some type of derogatory statement … I'm not for sure exactly what he said, but he made a statement that was – I guess you could say it was racial. I mean, he said something about I guess we're going to have some fudge sickles, or something like that, for dessert."[3] *Id.* at 190. Another inmate testified at the first trial only that an officer inside the bus "made some sort of a humorous

---

[2] The facts in this opinion are principally derived from the state appellate court's opinion affirming the trial court's denial of Birdo's petition for post-conviction relief. *People v. Birdo*, No. 4-10-0198 (Ill. App. Ct. 4th Dist. Oct. 14, 2011). The state court's factual findings are presumed to be true, and Birdo has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Thompkins v. Pfister,* 698 F.3d 976, 983 (7th Cir. 2012). Certain procedural facts are also derived from Birdo's pleadings in state and federal court, as well as from transcripts of hearings in state court.

[3] At Birdo's second trial, Birdo testified, "The bus driver interjected and said some type of derogatory comment and they laughed about it. He said something to the effect that I felt racially insensitive. I don't know if he meant it to be, but he said something to the effect I guess we are going to have fudge sickles for dessert. He and the other officers laughed about it … I just asked the inmate that was standing there, I said did you hear what he just said." *Id.* at 166-68.

comment about it … I remember him laughing about it … He was basically mocking him." *Id.* at 166-67.

On the morning of the second trial, Birdo (although still represented by Page) submitted a *pro se* motion to dismiss the indictment, arguing that Page was ineffective for, among other reasons,

> not promptly comply[ing] with the defendant's reasonable request for information regarding the bus driver whose name the defendant does not know, but is absolutely sure was physically involved and present during the entire alleged incident. During the trial the defendant informed his attorney that Mr. Cowan was not involved but instead a bus driver was. After the trial the defendant requested information regarding the bus driver and after the new trial was ordered the defendant still sought information regarding this material witness and this request was never responded to or fulfilled by Mr. Jeff Page.

Dkt. 15-13 at 34. Birdo also requested a continuance so that he could attempt to find the bus driver. Dkt. 15-6 at 229. The motions were denied.

Birdo raised his claim regarding Page's ineffective assistance for failing to investigate the bus driver in his direct appeal and in his post-conviction petition.[4] At an evidentiary hearing on Birdo's post-conviction claim, Page testified that he did not subpoena the bus driver at either trial. "From what I remember I don't even believe I had a report from [the State's Attorney's office] on this bus driver, and quite frankly from my recollection I don't recall him ever giving a

---

[4] Birdo argued in his post-conviction petition:

> [D]espite numerous requests by the defendant, Attorney Page failed to conduct any investigation as to the presence and/or participation of the bus driver. While the written statements of eye-witnesses, together with those of the defendant, placed the driver at the scene at the time of the incident, the State's witnesses testified under oath that the driver was not present.

Dkt. 15-6 at 269.

3

statement that would suggest that he knew anything about this altercation, that he saw it, or was even present for this alleged altercation." Page acknowledged, however, that Birdo told him that Young was present ("Mr. Birdo did mention that, yes.") and that it would not have been hard to track him down ("I guess I could have done that."). Dkt. 15-21 at 19-21, 23-24. The circuit court granted the State's motion for a directed finding, but did not mention in its ruling Birdo's claim as to the bus driver.

Birdo appealed, and the Illinois Appellate Court recognized that, "In its oral pronouncement, the [circuit] court did not analyze or mention Page's conduct of not contacting Young." Dkt. 15-10 at 9. It went on, however, to "find the court's analysis would apply equally to Young," denying the appeal. *Id.* The court added that the failure to investigate a witness "that purportedly had no knowledge cannot constitute substandard performance." *Id.* The Illinois Appellate Court summarily denied Birdo's petition for rehearing. Dkt. 23-2 at 1. Birdo petitioned for leave to appeal to the Illinois Supreme Court; that petition was also summarily denied. 968 N.E.2d 83 (Ill. 2012). On July 23, 2012, Birdo filed a habeas corpus petition in federal court.

## II. ANALYSIS

In its December 2013 Memorandum Opinion and Order, this Court concluded that, with respect to Claim D, the Illinois Appellate Court's application of *Strickland* to the facts before it was unreasonable.

As to Page's performance, this Court found that the appellate court wrongly treated an absence of evidence about Young's knowledge as *affirmative* evidence that Young had no knowledge about the incident, while ignoring evidence—in the form of two witness affidavits and Birdo's testimony—asserting that Young *was* present. Moreover, this Court noted that there was evidence that Page had reason to believe Young may have been present during the incident

4

and that he had ignored Birdo's pleas to investigate. This Court also concluded that Page was ineffective for relying solely on the absence of information in the State's discovery and ignoring information from his own client, corroborated by two witnesses.

As to prejudice, this Court concluded that the appellate court assumed, based on the evidence before it, that Young would have been an unhelpful witness ("a witness that purportedly had no knowledge," Dkt. 15-10 at 9), but there was virtually no basis to draw that conclusion. The appellate court did not know what, if anything, Young had to say about the incident or whether that testimony would create a reasonable probability that the outcome of Birdo's trial would have been different. Since the State's case at the second trial rested heavily on the testimony of two correctional officers, and Birdo's case rested heavily on his own testimony, the potential corroboration by a correctional officer testifying for the defense may have created reasonable doubt as to Birdo's guilt in the eyes of the jury.

This Court then asked the remaining unresolved question: whether Birdo was *in fact* prejudiced; *i.e.*, whether there is a reasonable probability that Young's testimony would have altered the outcome of Birdo's trial. The Court explained that if Birdo could not make this showing, his claim would fail on the merits.

The Court next appointed counsel and an investigator and gave that counsel the opportunity to locate David Young and to interview him about the incident. Birdo's counsel and investigator interviewed Mr. Young on May 13, 2014, in Red Bud, Illinois, for approximately one and one half hours. Mr. Young stated that he is now retired but that he had been a bus driver for the Illinois Department of Corrections until 2004 and was based at the prison in Menard. Affidavit of John D. Rea (May 18, 2014) ¶¶ 2-3, 5. He also stated that he knew Officers Wagner and Cowan—the two officers involved—well and that they were frequently on the bus he drove

from Menard to Logan. *Id.* ¶ 4. Mr. Young stated that he did not recall any incident in the transfer yard at Logan in January 2000 during which Officer Wagner and an African American inmate were in an altercation on the entry stairs to the bus. *Id.* ¶ 6. He added that he recalled other, more serious incidents involving altercations with other inmates, but not this one. *Id.* ¶ 6. After Birdo's counsel and investigator described more details regarding the incident to Mr. Young, Mr. Young stated that he still had no recollection of the incident. *Id.* ¶ 7. Mr. Young then "volunteered that if he had been asked about it in 2002 or 2003, he expected that he would have recalled the incident." *Id.*

Birdo's counsel and investigator also asked Mr. Young about the "fudgesickles" comment that Birdo attributed to him; Mr. Young "was taken aback by the question. He stated emphatically, 'I would not have said that.' He repeated that response." *Id.* ¶ 8. Birdo's counsel reported that Mr. Young's "eyes distinctly widened" and it was clear to the investigator "that he had not anticipated getting that question." *Id.*

Based on the foregoing, it is now apparent to this Court that there is not a reasonable probability that Young's testimony would have altered the outcome of Birdo's trial.[5] Rather, counsel's interview of Mr. Young casts further doubt on whether Young would have corroborated Birdo's version of events. To begin, Mr. Young has no memory of the Birdo incident; he did not recall it at all, a fact that suggests that, consistent with the testimony of other officers at the trial, he was not present. While Mr. Young acknowledged that he may have simply

---

[5] Birdo's appointed counsel asserts in his submission to this Court that an evidentiary hearing is unnecessary unless the Respondent takes issue with the affidavit submitted regarding Young's interview. The state has not objected to the affidavit or otherwise contested the accuracy of the account of the interview of Mr. Young by Birdo's counsel. Accordingly, the Court's assessment is based on the Memorandum in Support of Petition (Dkt. 50) submitted by Birdo's counsel, including the supporting affidavit of investigator John Rea, which sets forth the substance of the interview with Mr. Young.

forgotten the incident,[6] that inference is significantly weaker than the inference that he was not present at the time, given his complete lack of recollection of the incident even after Birdo's counsel and the investigator provided him with a detailed recitation of the facts based on the trial transcripts. The inference that Young was not present is also made stronger by the facts that Young (i) recalled a number of other altercations involving inmates and incidents and (ii) knew Officers Wagner and Cowan well, making it likely, as Birdo's counsel assumed, that his memory of the event would have been reinforced by some subsequent discussion with Wagner and/or Cowan about the incident (had he been present).

Further, it seems clear that, even if Young had been present during the incident, he would not have backed Birdo's version of events. As Birdo related the facts, Young precipitated the altercation to some degree by making an apparently racist comment to the effect that the black inmates waiting to board the bus, like Birdo, would be turning into "fudgesickles" due to the freezing temperatures. Young emphatically denied that he would ever make such a statement, so there is no basis to believe that he would have done anything but dispute Birdo's testimony in that regard had he been questioned about the incident more contemporaneously. Moreover, Investigator Rea's affidavit makes clear that "Young was taken aback by the question" and was not expecting it; his surprise at the question further confirms his lack of recollection of the incident and the fact that he was likely not present at the time; had he contributed to the fracas by

---

[6] In light of Mr. Young's complete lack of recollection about the incident, his statement to Birdo's counsel that had he been asked about the incident in 2002 or 2003 he "expected that he would have recalled" it can only be interpreted as an acknowledgment that his lack of recollection could be a product of the passage of time rather than lack of presence on the bus, and does not provide a reasonable basis to conclude that he would have been able to testify about the incident had he been asked about it at the time of Birdo's trials. As Birdo's counsel concedes, Young's statements are not adequate even to establish that he was on the bus at the time of the incident. Dkt. 50 at ¶ 17 ("The other [unknown at this point] is whether Officer Young was actually on the bus when the incident happened.")

making a racist statement, it seems likely that he would have some recollection of that fact. Mr. Young could, of course, be covering up his own embarrassing contribution to this incident,[7] but if that is the case, there is little reason to believe that he would not have behaved similarly if the same questions had been put to him ten years ago (indeed; he might have had more to lose at that point, when he still had several years to go until retirement).

Mr. Young may or may not have remembered the incident had Page asked him about it in 2002 at the time of Birdo's first trial, but at this point in time, Birdo has presented no reason to believe Mr. Young would have bolstered Birdo's version if he did remember it. Since Birdo has given this Court no basis to believe that Mr. Young would have been a helpful witness to Birdo, and since instead this Court is now presented with further doubt as to Mr. Young's helpfulness, Birdo has not shown the requisite prejudice for his ineffective assistance of counsel claim.

To the extent that Birdo argues in his own submissions to the Court [53, 54] that he is nonetheless entitled to an evidentiary hearing, those motions are denied. This Court appointed counsel for Birdo to locate Mr. Young and interview him. Counsel completed that task with diligence and competence. Since this Court has now concluded that Birdo has not shown that he was prejudiced by Page's ineffectiveness, Birdo is not entitled to an evidentiary hearing in federal court.

### III.  CERTIFICATE OF APPEALABILITY

Under the 2009 Amendments to Rule 11(a) of the Rules Governing Section 2254 Proceedings, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Accordingly, the Court must determine whether to grant

---

[7] The Court hastens to add that it is in no way suggesting that Mr. Young was anything but truthful in responding to the questions from Birdo's counsel and investigator, who described Mr. Young as cooperative and straightforward.

Birdo a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2) in this order. A habeas petitioner does not have the absolute right to appeal a district court's denial of his habeas petition. Instead, he must first request a certificate of appealability. *See Miller–El v. Cockrell*, 537 U.S. 322, 335 (2003); *Sandoval v. United States*, 574 F.3d 847, 852 (7th Cir. 2009). A habeas petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *See Miller–El*, 537 U.S. at 336; 28 U.S.C. § 2253(c)(2). Under this standard, Birdo must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller–El*, 537 U.S. at 336 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Here, jurists of reason would not debate the Court's conclusion that Birdo's four claims fail because the denial of Birdo's motion to substitute the judge did not violate due process (Claim A), because Claims B and C are not cognizable in federal habeas review, and because Birdo has not shown the requisite prejudice to succeed on his ineffective assistance of counsel claim (Claim D). Therefore, the Court declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

\* \* \*

For all of these reasons, the Court denies Birdo's petition for a writ of habeas corpus and declines to certify any issues for appeal. *See* 28 U.S.C. §§ 2253(c)(2), 2254(d).

Entered: August 5, 2014

John J. Tharp, Jr.
United States District Judge